635 So.2d 1352 (1994)
Paul MARTIN, Jr.,
v.
STATE of Mississippi.
No. 91-KA-0825.
Supreme Court of Mississippi.
January 27, 1994.
Rehearing Denied May 19, 1994.
George S. Shaddock, Pascagoula and Parchman, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and BANKS and JAMES L. ROBERTS, Jr., JJ.
BANKS, Justice, for the Court:
Paul Martin prosecutes this appeal from his sentence for the crime of armed robbery and the plea bargain entered in the Circuit Court of the Second Judicial District of Harrison County. He complains that the trial court erred when it rejected the prosecution's recommended five (5) year sentence and sentenced him to a term of eight years (8) to serve in the custody of the Mississippi Department of Corrections. Finding no error, we affirm.

I.
The appellant, Paul Martin, Jr., age 18, was indicted by the Grand Jury, Second Judicial *1353 District (Biloxi) Harrison County, Mississippi, together with five others on the charge of armed robbery and kidnapping. The state subsequently dismissed the kidnapping charge against Martin. Thereafter, on the trial day, Martin agreed to plead guilty to the armed robbery.
During the hearing, Martin stated that he discussed his entry of a plea of guilty with his mother and older brother, and his attorney, who were all also present. The court informed Martin of the mandatory minimum three years for armed robbery and stated that because the State would be waiving life sentence on a plea, the maximum sentence on a plea of guilty for armed robbery could be potentially a sentence of one year or less than what would be expected of Martin's natural life. The court also informed Martin that a person sentenced for armed robbery is not eligible for parole until he has served ten years of the sentence  that is he must serve every single day of the sentence. The court then explained that, if he sentenced the defendant for ten years, he might be eligible for parole after ten years. Upon the request for its recommendation, the state recommended "a five-year sentence on armed robbery to run concurrent with his three-year sentence from Jackson County and in exchange for the defendant's testimony against the two other co-defendants". Martin's attorney then stated that there was some confusion on whether Martin would have to testify as a condition of the recommendation. However, the attorney stated that he told Martin that it was his understanding that the court is not bound by the state's recommendation.
Subsequent to this discussion, the court explained to Martin that, regardless of the conditions of the plea, he did not have to follow the recommendation of the state and that if Martin pled guilty, upon entry of the plea and acceptance by the court, that means that at that point, he gives up his right not to testify. Knowing this, Martin stated that he still wanted to plead guilty.
The court then asked Martin about his arrest record. Martin stated that recently he pled guilty to two felony charges for possession of a controlled substance, cocaine, from which he received three year sentences to run concurrently. There was also a case pending against Martin in Jackson County for aggravated assault; Martin was kicked out of school in the eleventh grade for possession of drugs; and two months prior to the current trial, charges were dropped against Martin for fighting. Again, the court informed Martin that he was not bound by the recommendation of the prosecutor, to which Martin stated that he understood.
The court asked Martin if he understood the armed robbery charge, Martin answered yes. To this charge of armed robbery, Martin pled guilty. Thereafter, the court questioned Martin, his attorneys, and the prosecutor as to the specific facts on which the charge was based. The court asked Martin if he wanted to go forward and have him accept the plea of guilty, to which Martin answered yes. The court found that Martin voluntarily and knowingly pled guilty and that he understood the nature and purpose of the proceedings, and fully appreciated the consequences of entering the plea based on those findings the court accepted the guilty plea. The court then stated that it would order a full-blown pre-sentencing report and mused as follows: "I don't know whether or not I'll follow the recommendation or not, but I will say this, whatever sentence I do impose, I will impose a concurrent sentence. I will certainty take into account that he's pled guilty, but regardless of the sentence imposed, I will certainty run the sentence concurrent with Jackson County." At the trial of his co-defendants, Martin testified for the state in its case against two of the defendants, Tremayne Montel Harris and Billy Ray Stewart, Jr.
At the sentencing hearing on April 8, 1991, the judge stated that
[c]ollectively speaking, if I counted anywhere near correct as to the charges each one of those defendants has been involved in at various times, be they misdemeanor, felony or juvenile or adult, there is probably *1354 in excess of one hundred cases collectively on all of them. Each one has varying backgrounds. For example, Mr. Martin, you have probably the worst history of all, although you testified for the State after you entered a plea of guilty. Some of the lighter ones were Mr. Stewart and Mr. Harris, who went to trial on the charge.
The judge sentenced each of the defendants to a term of eight years.
On April 18, 1991, Martin filed a "Motion for Reconsideration" of the sentence claiming that if he had known that the Court would not accept the state's recommendation of a five year sentence, he would not have pled guilty and testified for the state in the trial of two of the co-indictees. He asked that the court reconsider his sentence or allow him to withdraw his guilty plea. On June 6, 1991, Judge Thomas heard Martin's motion to reconsider the sentence, and on August 1, 1991, Judge Thomas entered his order overruling the motion. This appeal followed.

II.
Martin contends that the lower court violated the plea agreement when the trial judge failed to accept the state's sentencing recommendation. Martin argues that we should remand this case for re-sentencing in accordance with the plea-bargain since this case "involves more than a mere plea-bargain where a defendant, acting through his attorney, enters into an agreement to plead guilty and in turn, the State makes an agreed upon recommendation as to penalty. Here, not only was an agreement made as to a recommendation as to penalty in exchange for a guilty plea, but an agreement was entered into between the State and the Appellant whereby the appellant would testify against his co-indictees."
In support of his position, Martin cites Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) for the proposition that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." In Santobello, the prosecution agreed to drop a more serious charge and not to recommend a sentence in exchange for the defendant's guilty plea to a lesser offense. Id. The court accepted the plea. Id. During the sentencing hearing, a different prosecutor recommended to a different judge that the maximum sentence be imposed. Id. In vacating the judgment, the Supreme Court found that the state violated the defendant's right to due process by breaching the plea agreement. Id.
Santobello is distinguishable from the instant case. In Santobello, the breach of promise was based upon the fact that the prosecutor failed to abstain from making a sentence recommendation in violation of his predecessor's promise and not, as in the instant case, on whether the trial judge followed the prosecutor's recommendation. In the instant case, the prosecutor, as promised, recommended the sentence to the court.
Martin further contends that the trial court reneged on the plea-bargain agreement by sentencing him to a mandatory eight years. Martin stated that "to allow trial judges who are well aware of plea-bargain agreements to renege or not honor such agreement will ... defeat the very purposes for which plea-bargains are promoted." Martin fails to understand that, in the instant case, the judge was not part of the deal worked out between him and the state. The state made a promise that it would recommend that the trial court give Martin a five-year sentence to run concurrently with the sentence in Jackson County. Martin made a promise that he would plead guilty to the charge of armed robbery and testify against the two co-defendants. The court never bound itself to follow the recommendation of the prosecutor. In order to renege on a deal, you must be a part of the deal.
Thus, Martin's reliance on Salter v. State is misplaced. There we held that "the state, whether it be through the prosecutor, the trial judge, or both, is bound by its plea-bargain agreement with a defendant who *1355 pleads guilty pursuant to the agreement." Salter v. State, 387 So.2d 81, 83 (Miss. 1980). Salter is factually different from the instant case and is distinguishable because there the trial judge participated in the plea bargaining process. He did not tell the defendant that he was not bound by the prosecutor's sentence recommendation. In the instant case, the circuit judge did not participate in the plea bargaining discussion between Martin and the state. Moreover, both the trial judge and the defense attorney informed Martin that the state's sentence recommendation was not binding on the court. Additionally, the trial judge explained to Martin that he had the liberty to reduce or increase the state's recommended sentence as long as the imposed sentence was within the prescribed statutory time. See Ainsworth v. State, 304 So.2d 656, (Miss. 1975) (A sentence imposed on a defendant will not be reviewed if the sentence is within the limit prescribed by statute).
In opposition to Martin's position, the State correctly cites Moore v. State for the proposition that where the prosecutor has done nothing more than promise to recommend that the trial court grant the accused a certain concession, pursuant to the plea agreement, and if the judge informed the accused that he is not bound to accept the state's recommendation, it is not error if the trial court does not follow the prosecutor's sentencing recommendation. Moore v. State, 394 So.2d 1336, 1337 (Miss. 1981). In Moore, the defendant, Moore, pled guilty to burglary after the prosecutor agreed to recommend an eleven month sentence with credit for the eleven months served. Id. at 1336. The circuit judge "carefully questioned [the] defense counsel as to whether he had informed Moore of his legal and constitutional rights, the maximum penalty for burglary, and that the court did not have to follow the recommendation of the district attorney." Id. In response to the circuit judge's questions, Moore stated he understood that the prosecutor's recommendation was not binding on the court. Id. at 1337. Thereafter, the circuit judge accepted the plea and the prosecutor made the recommendation for the reduced sentence. Id. However, the circuit judge rejected the prosecutor's recommendation and sentenced the defendant to three years in the state penitentiary. Id. We affirmed the trial court's decision to deny Moore's petition for writ of error coram nobis and stated that "the defendant Moore and his attorney were carefully and fully advised that the district attorney's recommendation was just that  a recommendation only  and that the court was in no wise bound by it." Id.
Moore is analogous to the instant case. As in Moore, the circuit judge in the instant case thoroughly questioned Martin relative to his knowledge of the consequences and waivers associated with the plea bargaining. He informed Martin of the mandatory minimum three-year sentence and the maximum sentence of one year less than his natural life on a plea of guilty for armed robbery. In addition, the circuit judge explicitly stated, at least three times, that he was not bound by the recommendation of the state, and that he could, in fact, give Martin as long as thirty years, to which Martin stated that he understood. Martin's attorney also stated that he explained to Martin that the court was not bound by the recommendation of the state.
Pursuant to Rule 4.03 of the Mississippi Uniform Criminal Rules of Circuit Court Practice, the state and Martin reached an agreement that if Martin would plead guilty to the armed robbery charge and testify against two of the co-defendants, the state would "recommend" to the trial court that Martin receive a five-year sentence on the armed robbery charge. Rule 4.03 provides in pertinent that:
The prosecuting attorney, defendant's counsel, or the defendant acting pro se, may engage in such discussion with a view toward reaching an agreement that upon entering a plea of guilty to the offense charged or to a lesser or related offense, the attorney for the state may do any of the following: (1) Move for a dismissal of other charges; and (2) Make a recommendation *1356 to the trial court for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court.
Miss.Unif.Crim.R.Cir.Ct.Pract. 4.03 (emphasis added). In addition Rule 4.03 provides that "[t]he trial judge shall not participate in any plea discussion." Id. In the instant case, in accordance with the rule, the circuit judge did not participate in the plea bargain discussion.
In filing a "Motion for Reconsideration" of the sentence, Martin contends that he had known that the court would not accept the state's recommendation of a five-year sentence, he would not have pleaded guilty and testified for the state in the trial of two of the co-defendants. Although Martin does not rely on the case in his brief, during the hearing Martin cited Boyington v. State, for the proposition that when there is a plea bargain with something more, such as where the defendant serves as a witness for the state as in the instant case, or as an undercover informant as in Boyington, the trial court should accept the prosecutor's sentencing recommendation.
In Boyington, after the defendant was indicted on a charge of selling marijuana, he entered into an agreement with the district attorney and the Mississippi Bureau of Narcotics to do undercover work in exchange for a recommendation that he be placed on probation. Boyington v. State 389 So.2d 485, 487-88 (Miss. 1980). After Boyington received the promise of leniency and probation, he worked undercover for six (6) months and developed ten cases. Id. at 488. "The Newton County Circuit Court and the District Attorney's Office knew that appellant was working [undercover]." Id. at 488. After the defendant was arraigned, "the court, being aware of the defendant's work with the Mississippi Bureau of Narcotics, granted a continuance of the case ..." Id. However, during sentencing, the circuit judge rejected the recommendation of probation and then the district attorney recommended a sentence of two (2) years in the state penitentiary, of which the circuit judge accepted. Id. We vacated the sentence and ordered that the defendant be placed on probation. We explained that "[w]hile a trial judge must control the sentencing phase of a criminal trial and has the responsibility and duty of approving or disapproving a recommendation by the prosecutor, he should never become involved, or participate, in the plea bargaining process. He must remain aloof from such negotiations." Id. at 490 quoting Fermo v. State, 370 So.2d 930, 933 (Miss. 1979).
It is clear that the trial judge in the instant case "display[ed] neutrality and fairness in the [hearing]" and showed "consideration for the constitutional rights of the accused." Fermo, 370 So.2d at 933. Moreover, the trial judge did not participate in the plea bargaining. Martin, like Moore, "clearly understood that the judge was not bound in any way by the recommendation of the district attorney." Moore, 394 So.2d at 1337. After informing Martin of the rights waived by a plea of guilty and questioning Martin, his attorneys and the prosecutor as to the facts on which the charge was based, the trial judge asked Martin if he still wanted to plead guilty and Martin answered in the affirmative. The court reserved its ruling on whether to accept the plea bargain until after he received and reviewed the pre-sentence report.
Martin contends that we should enforce the five-year sentence, since his promise to testify was a condition precedent to the plea bargain agreement. However, it is clear from the record that the court adequately informed Martin that he maintained the discretion to accept or reject the state's recommendation upon receipt and review of the pre-sentencing report. It is also clear from the hearing on the "Motion to Reconsider" Martin's sentence that, upon receipt and review of the pre-sentence report, the court took into consideration the fact that Martin testified for the state prior to giving him the eight-year sentence. The maximum sentence that was given to the defendants was eight years. The judge stated that, absent the *1357 plea bargain agreement, Martin would have been exposed to a greater penalty because, of all the pre-sentencing records, Martin's was the worst. We have stated that where "the record reveals without a doubt that the sentence imposed was based solely upon a defendant's prior convictions, or, as here, the pre-sentencing report, we will not disturb the trial court's discretion in sentencing." Gillum v. State, 468 So.2d 856, 864 (Miss. 1985).
For the foregoing reasons the judgment of the circuit court is affirmed.
CONVICTION OF ARMED ROBBERY AND SENTENCE OF EIGHT YEARS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.