COLEMAN, J.,
for the Court:
¶ 1. Kenneth Daggans appeals from the order denying relief which the Circuit Court of the First Judicial District of Harrison County rendered after it conducted an evidentiary hearing on Daggans’s “writ of habeas corpus,” which the circuit court elected to “treat[] as a Petition for Post Conviction Relief pursuant to Section 99-39-3.” Daggans presents five issues for our review and resolution, which we quote *1035 verbatim from his statement of issues required by Mississippi Rule of Appellate Procedure 28(a)(3):
I. SENTENCE WAS INDEED ILLEGAL, ACCORDING TO THE COMMITMENT ORDER PG. 27-28 OF DOCKET NO. 97-CA-0236 AND THE SENTENCING AND PROBATION ORDER, ERROR.
II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS AFFORDED BY LAW.
III. SENTENCE VIOLATES APPELLANT’S RIGHT AGAINST PROTECTION FROM DOUBLE JEOPARDY.
IV. APPELLANT WAS DENIED DUE PROCESS OF LAW NOT BEING ADVISED OF PROBATION.
V. CRUEL AND UNUSUAL PUNISHMENT, PROVIDED BY THE STATES CONSTITUTION AMENDMENTS.
¶ 2. We affirm the circuit court’s denial of relief on Daggans’s post conviction petitions.
I. Facts
¶3. On August 30, 1991, Daggans entered pleas of guilty to four felonies: (1) aggravated assault, (2) burglary of a dwelling house, (3) burglary of a dwelling house, and (4) possession of burglary tools. Dag-gans had been indicted for the first felony, aggravated assault; and he waived indictment on the other three felonies to which he entered pleas of guilty. Daggans was represented by counsel, who participated actively in the trial court’s hearing on whether it should accept his pleas of guilty to these four felonies. After its exhaustive questioning of Daggans, the trial court found as follows:
Very well. Based upon this defendant’s demeanor, the responses made here under oath and under oath in the petition, I find on this record and find beyond all reasonable doubt that he’s certainly intelligent enough to understand the nature and purpose of this proceeding. I find factually that he fully comprehends and appreciates the consequences of entering this plea — these pleas; that the pleas here are entered freely and voluntarily without any force, threats, or promises having been made other than the recommendation made known to him by the State which he understands I do not have to follow. I find the pleas to be made knowingly and intelligently after full consultation with his attorney and with the full understanding of all of his legal and Constitutional rights.
Finally, based upon the statements made here under oath and in his petition under oath, I find him factually guilty of all four charges and therefore find and adjudicate him guilty of aggravated assault, of two counts of burglary of a dwelling, and of one count of possession of burglary tools.
Pursuant to the State’s recommendation made in accordance with a “plea bargain” with Daggans’s counsel, the trial court sentenced Daggans to serve “twenty years on the aggravated assault, ten [years] on each of the burglaries, five [years] on the possession [of burglary tools], suspended] all but eight [years], and requirefd] that [Dag-gans] serve eight years.” All four sentences were to run concurrently.
¶ 4. After the judge imposed these four sentences upon Daggans, Daggans’s counsel asked the judge to affirm counsel’s representation to Daggans that “this eight years would be with parole.” The judge replied, “It is. It is.” Only then did the judge add:
[T]here’s one thing I forgot. I don’t think it’s on the recommendation, but I am going to do this. Since I’m suspending a substantial period of time, I’m going to put him [Daggans] on four years’ probation after release under parole.
The judge elaborated: “You’ll be on probation, reporting probation with this Court after you’re released from Parchman, but *1036 you are eligible for parole on the eight-year sentence.” Daggans responded, “Yes, Sir.” Regardless of Daggans’s positive response, the judge continued:
The only thing about it is this. If you get in trouble after you get out of Parch-man, if I revoke your probation, that means I can go all the way back up and give you the rest of the twenty years. You understand what I’m saying?
Daggans again answered, “Yes, Sir.” Thus ended the hearing on whether Daggans’s four pleas of guilty were voluntary.
¶ 5. Dated the same day of Daggans’s guilty pleas was the circuit court’s “Sentencing & Probation Order,” in which the circuit court included its sentences which we related. This order also provided that “[u]pon release from the custody of the Mississippi Department of Corrections the defendant is hereby placed under the supervision of the Mississippi Department of Corrections for a period of FOUR (4) YEARS on PROBATION....” Among the conditions upon which the circuit court imposed this four-year period of probation were these:
(d) Report to the supervising officer as directed.
[[Image here]]
(m) Submit ... to any type of breath, saliva or urine chemical analysis test, the purpose of which is to detect the possible presence of alcohol or a substance prohibited or controlled by any law of the State of Mississippi or the United States.
¶ 6. Daggans “flat-timed” his sentence of eight years and was discharged from the custody of the Mississippi Department of Corrections on April 12, 1995, after he had served approximately four and one-half years. Less than four months later, Dag-gans’s probation officer filed a petition to revoke probation, in which the probation officer asserted that Daggans had “violated the terms and conditions of his probation ... by testing positive for the use of cocaine on a urine sample obtained on 5/4/95 ... [and] by failing to report for the months of May, June and July, 1995.... ” The circuit court conducted a hearing on the petition to revoke, during which Dag-gans admitted the previously quoted allegations because he “had a drug problem ... and wanted some help for it.” The circuit court terminated Daggans’s probation and ordered him to serve the balance of his sentences for aggravated assault and the two burglaries of a dwelling house.
¶ 7. Daggans filed a “notice of appeal on writ of habeas corpus petition,” on which the circuit court conducted a hearing pursuant to an order of the Mississippi Supreme Court that the circuit court conduct a full hearing on this pleading. The circuit court conducted the hearing on May 19, 1997. The attorney who had represented Daggans on August 30, 1991, when the circuit court had accepted Daggans’s four pleas of guilty, represented Daggans at this latter hearing. Daggans testified that he did not know that he had been placed on probation until April 11, 1995, the day before his discharge from the custody of the Mississippi Department of Corrections. Daggans also testified that “[t]he courts didn’t send me [the sentencing and probation order dated August 30, 1991] until 1996.” Daggans complained that the sentencing and probation order erroneously listed another lawyer as his lawyer rather than the correct attorney, Tom Sumrall, who had been the only attorney to represent him. Daggans further complained, correctly this Court notes, that he had not signed beneath the statement, “I accept the above probation in accordance with the terms thereof.”
¶ 8. After Daggans concluded his testimony, the assistant district attorney moved to dismiss Daggans’s petition because it was “filed out of time.” The judge found:
The Court finds that taking this particular [sentencing and probation] order, together with the transcript [of the hearing on the voluntariness of the pleas of guilty], that the defendant’s sentence *1037 was duly pronounced in open court and the defendant was placed on notice as to what his sentence was. In addition to that, by the defendant’s own acknowledgment, the day before he was released from Parchman, he was aware that he was to report for probation.
Consistent with the foregoing finding, the circuit court entered its order denying relief “on all post conviction petitions,” but allowed Daggans “to proceed in forma pau-peris.” It is from this order denying relief that Daggans has appealed.
II. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES
A. A preliminary matter
¶ 9. Other than the assistant district attorney’s passing reference to Dag-gans’s having “filed out of time” his petition, to which we previously referred, the State never moved the circuit court to dismiss the petition because Daggans did not file it until more than three years after August 30, 1991, the date that the circuit court had accepted Daggans’s four pleas of guilty. Section 99-39-5(2) establishes certain time limitations within which a prisoner may seek post conviction relief. The portion of this section seemingly relevant to the date when Daggans filed his petition reads as follows:
A motion for relief under this chapter shall be made ... in case of a guilty plea, within three (3) years after entry of the judgment of conviction.... Likewise excepted [from this three year limitation] are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.
Miss.Code Ann. § 99-39-5(2) (Supp.1998).
¶ 10. The State did not confront the circuit court with the issue of whether Daggans’s petition ought to have been dismissed because Daggans had filed it on November 19, 1996, a date more than three years after August 30, 1991. Instead, the circuit court conducted a hearing on Daggans’s petition on May 19, 1997, after the Mississippi Supreme Court had entered an order directing the circuit court to conduct this hearing within forty five days of the date of its order. Not until Daggans appealed the circuit court’s denial of any relief did the State argue that Dag-gans filed his petition too late pursuant to Section 99-39-5(2).
¶ 11. The State’s presenting the issue of whether Section 99-39-5(2) barred Dag-gans’s filing his petition appears to be proeedurally barred because it failed to confront the circuit court with this issue. See Touart v. Johnston, 656 So.2d 318, 321 (Miss.1995) (reciting that a party to an appeal is not entitled to raise new issues on appeal since to do so denies the trial court the opportunity to address the matter).
¶ 12. Section 99-39-5(2) excepts from the application of its three year limitation “those cases in which the prisoner claims that ... his probation ... has been unlawfully revoked.” Because Daggans’s fourth issue attacks the revocation of his probation on the basis that he had not been advised that he had been placed on probation — a denial of due process — -this Court declines to apply the procedural bar to the State’s argument. Thus, this Court finds that regardless of its merit, Daggans’s fourth issue is sufficient to exclude the application of Section 99-39-5(2) as a basis for dismissing Daggans’s petition. Now, we review Daggans’s issues.
B. Daggans’s first issue

1. Daggans’s arguments

¶ 13. Daggans attacks the accuracy of the transcript of the hearing regarding his pleas of guilty which the circuit court conducted on August 30,1991. Daggans is compelled to offer this argument because he also asserts that the circuit court never placed him on probation after it accepted his four pleas of guilty. Section 9-13-43 of *1038 the Mississippi Code provides that “[w]hen a transcript has been made by the official reporter and certified to as being a correct transcript of notes, tapes or audio records of the testimony and other proceedings of the trial, the same shall be prima facie a correct statement thereof....” Miss. Code Ann. § 9-13-43 (Rev.1991). The transcript of the August 30, 1991 hearing concludes with the “Court Reporter’s Certificate” in which the court reporter who prepared the transcript certified “that the above and foregoing 24 pages contain a true, full, and correct transcript of my stenographic notes and tape taken in said proceedings.” In Rotwein v. Holman, 529 So.2d 173, 175 (Miss.1988), the supreme court explained, “Certification imports absolute authority, and the certified record is the sole evidence of the proceedings below.” Rule 10(e) of the Mississippi Rules of Appellate Procedure establishes the procedure for correcting an error in the record of a case.[1] Daggans did nothing to correct the error in the transcript which he claims; thus, we need not consider further his allegation.
¶ 14. As his second argument, Dag-gans contends that “[t]he State, whether it be through the trial judge [or] the prosecutor is ... bound by its agreement with the defendant who [pled] guilty pursuant to the agreement....” He cites Salter v. State, 387 So.2d 81 (Miss.1980) in support of his argument. Opining that “[t]he state, whether it be through the prosecutor, the trial judge, or both, is bound by its plea-bargain agreement with a defendant who pleads guilty pursuant to the agreement the supreme court reversed and vacated Salter’s conviction of embezzlement because the terms of the “plea bargain” agreement were violated by the trial court’s “ordering] the district attorney to revive the remaining eight indictments by ‘whatever means appropriate.’ ” Salter, 387 So.2d at 83. Even though the State had agreed to “nol pros” the remaining eight indictments of Salter for embezzlement, the State obtained re-indictments on three of those charges. Id. The judge actively participated in the violation of the terms of the original plea bargain in Salter.
¶ 15. Moore v. State, 394 So.2d 1336, 1337 (Miss.1981) disposes of Daggans’s argument. In Moore, “the trial judge took no part in the plea bargaining, held himself completely aloof, and Moore clearly understood that the judge was not bound in any way by the recommendation of the district attorney.” The judge rejected the State’s recommendation that Moore serve “eleven months in the county jail with credit for the eleven months already served” on a charge of burglary. Id. Instead, the judge “sentenced Moore to three years in the Mississippi State Penitentiary.” Id. The supreme court affirmed the judge’s rejection of the State’s recommendation, which it had made pursuant to an agreement with Moore. Id.
¶ 16. The following portions of the record in the case sub judice demonstrate that before he accepted Daggans’s four pleas of guilty, the judge repeatedly advised Daggans that he was not obligated to accept the State’s recommendation about Daggans’s sentences:
THE COURT: Now, I need to advise you on these charges that you face substantial time. You don’t have a prior felony conviction according to your record, right?
*1039 MR. DAGGANS: No, sir.
THE COURT: That means you could get probation. However, you face twenty years on the aggravated assault and ten years apiece on the burglaries and five years on the possession charge, which means quite literally you face a maximum sentence of, what, forty five years in the state pen. You understand that?
MR. DAGGANS: Yes, sir.
THE COURT: Now, given the nature of the charges and the multiple number of charges, I have to tell you, in all candor, before I start to accept your plea, that I would not give you probation. And I see here that the State’s not even going to recommend probation. They’re going to recommend a sentence of eight years to serve total.
MR. DAGGANS: Yes, sir.
THE COURT: Is that your understanding as to what the State would recommend?
MR. DAGGANS: Yes, sir.
THE COURT: Of course, I don’t have to follow that. I can go above it or below it. Okay?
MR. DAGGANS: Yes, sir.
THE COURT: But I do want you to know before I accept your plea, again, that because of the — again, the nature of the charges and the number of charges, that I would impose time in this case.
MR. DAGGANS: Yes, sir.
THE COURT: It’s just that I may not go by the recommendation. I might go above it or below it, but I am going to give you time. So I want to let you stop the plea if you want to. Do you wish to do that, or do you want to go forward and have me accept it?
MR. DAGGANS: Go forward and have you accept it.
¶ 17. Daggans does not charge that the judge participated in the negotiations from which the plea bargain emerged. The foregoing extensive quotation from the record establishes that the judge warned Daggans that he, the judge, was not obligated to accept the State’s recommendation for sentencing Daggans. In fact, the judge accepted the State’s recommendation for sentencing Daggans but deviated from the plea bargain by imposing a four-year period of probation, which was to begin after the Mississippi Department of Corrections discharged Daggans upon his completion of serving the eight years which the judge imposed. The record supports our relying on Moore to find no error in Daggans’s first issue insofar as his two arguments are concerned.
C. Daggans’s second issue
¶ 18. For his second issue, Daggans argues that he “was denied effective assistance of counsel as afforded by law” because his attorney did not advise him of his “right to remain silent” when the judge questioned him about whether his four pleas of guilty were voluntary and because his attorney “allowed a period of probation to be followed ... up ... that was in fact illegal.... ”
¶ 19. Daggans’s assertion of a right to remain silent while the judge questions him about whether his pleas of guilty are voluntary is incongruous with the judge’s duty to ascertain that there is a “factual basis” for the accused’s plea of guilty. In Lott v. State, 597 So.2d 627, 628 (Miss.1992), the supreme court explained:
We recognize, however, that a factual basis is an “essential part of the constitutionally valid and enforceable decision to plead guilty.” This factual basis cannot simply be implied from the fact that the defendant entered a plea of guilty. Rather, there must be an evidentiary foundation in the record which is “sufficiently specific to allow the court to determine that the defendant’s conduct *1040 was within the ambit of that defined as criminal.” Unless courts are satisfied that such a factual basis exists, they are admonished not to enter judgment on a plea of guilty.
The right to remain silent as guaranteed by the Fifth Amendment, which protects against self-incrimination, becomes a non sequitur if the accused intends to admit the truth of the charge for which the accused has been indicted. Daggans’s counsel was not ineffective because his counsel failed to advise him of his right to remain silent. Instead, Daggans’s silence in response to the judge’s questions about the voluntary nature of his guilty pleas would have compelled the judge to reject Dag-gans’s pleas of guilty.
¶ 20. Neither was Daggans’s sentence illegal because, as Daggans argues, “it would be indeed illegal to sentence a person to be on parole and probation at the same time.” In Moore v. State, 585 So.2d 738, 739 (Miss.1991), the trial court sentenced the appellant, whom the jury had found guilty of rape, to serve thirty years in the custody of the Mississippi Department of Corrections, suspended fifteen years of the sentence, but ordered the appellant “to serve a five (5) year period of supervised probation” after the appellant had served the fifteen year portion of the sentence. The issue to be adjudicated was when did the appellant’s five-year period of probation begin to run. Id. at 740. The supreme court held: Id. at 741. Like Moore’s sentence, which the supreme court implicitly approved, Daggans’s four-year period of probation began after he “was released on supervised probation from the custody ... following discharge from the [twelve (12) ] year ‘to serve’ portion of the original sentence.” See Moore, 585 So.2d at 741. Moore establishes that Daggans’s sentence was legal even if he was placed on probation during the running of the period of the suspension of the fifteen year balance of his sentence. Therefore, Daggans’s trial counsel was not ineffective by failing to object to the circuit court’s imposition of its original sentence.[2] For these reasons, this Court resolves Daggans’s second issue adversely to him.
To summarize, this Court holds the five (5) year probationary period for the fifteen (15) year suspended portion of Moore’s thirty (30) year sentence did not begin to run until April 8, 1988, the day [Moore] was released on supervised probation from the custody of the Mississippi Department of Corrections following discharge from the fifteen (15) year “to serve” portion of the original sentence.
D. Daggans’s remaining three issues
¶ 21. Daggans’s remaining three issues are that the revocation of his probation and sentence to serve the balance of his original sentence of twenty years, which was twelve years, constituted double jeopardy because “the Court did in fact give [Daggans] another term of incarceration for one offense twice,” that he was denied due process of law because he was never advised that he would be placed on probation after his discharge from custody of the Mississippi Department of Corrections, and that his sentence and revocation of probation constituted “cruel and unusual punishment.” However, Daggans offers neither argument nor authority to support any of his latter three issues; thus, we need not consider them. See Hoops v. State, 681 So.2d 521, 526 (Miss.1996) (holding that it is the duty of an appellant to provide authority and support of an assignment); Hewlett v. State, 607 So.2d 1097, 1106 (Miss.1992) (explaining that “[t]his Court is under no duty to consider *1041 assignments of error when no authority is cited”).
¶22. Nevertheless, with regard to Daggans’s fourth issue, which is an allegation that he was never advised that he had been placed on probation, the transcript of the circuit court’s hearing on Daggans’s four pleas of guilty demonstrates that the judge, even though belatedly, advised Dag-gans that he was being placed on probation. Moreover, during the hearing conducted on May 19, 1997, on Daggans’s petition for habeas corpus, which the circuit judge treated as a petition for post conviction relief, the assistant district attorney asked Daggans but one question: “Mr. Daggans, you were advised by the records people in the penitentiary before you were released that you had to go on probation?” Daggans answered, “One day before I was released.” The circuit court found “that the defendant’s sentence was duly pronounced in open court and the defendant was placed on notice as to what his sentence was.” The circuit court added, “[B]y the defendant’s own acknowledgment, the day before he was released from Parchman, he was aware that he was to report for probation.” The transcripts of the hearings on Daggans’s pleas of guilty and on his petition for post conviction relief belie his allegation that he was never advised that he had been placed on probation.
III. SUMMARY
¶ 23. The sentences imposed by the circuit court on Daggans were legal. Dag-gans’s trial counsel was not ineffective because he failed to advise Daggans of his right to remain silent when the judge inquired about the “factual basis” of the four crimes to which he was entering his pleas of guilty. The record establishes that Daggans had been advised that he would be placed on probation for a period of four years after he was discharged from serving the eight-year “to serve” portion of his twenty-year sentence. Because this Court finds no error in any of Daggans’s issues on which Daggans offered argument and/or authority, it affirms the judgment of the Circuit Court of the First Judicial District of Harrison County as contained in that court’s order denying relief rendered May 19, 1997, which “denied relief on all post conviction petitions” filed by Daggans.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY DENYING RELIEF ON ALL OF THE APPELLANTS’ PETITIONS FOR POST CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, AND PAYNE, JJ„ CONCUR.
THOMAS, J., NOT PARTICIPATING.

. Rule 10(e) provides in relevant part:
If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated in the record, the parties by stipulation, or the trial court, either before or after the record is transmitted to the Supreme Court or the Court of Appeals, or either appellate court on proper motion or of its own initiative, may order that the omission or misstatement be corrected, and, if necessary, that a supplemental record be filed.
M.R.A.P. 10(e).

. The record reflects that when the circuit court revoked Daggans's probation, it initially ordered him to serve the entire twenty-year sentence. Daggans's original trial counsel filed a motion to reconsider sentencing, which the circuit court granted by entering an order sentencing Daggans to serve "a total of twelve (12) years ... in the custody of the Mississippi Department of Corrections.